UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID ARTHUR DEPONTE,<br><br>Plaintiff,<br><br>v.<br><br>STOHL, et al.,<br><br>Defendants. | Case No.: 1:25-cv-00674-JLT-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND DEFENDANTS FOLLOWING SCREENING OF PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>(Doc. 24)<br><br><u>14-Day Objection Deadline</u> |

Plaintiff David Arthur DePonte is appearing pro se and *in forma pauperis* in this civil rights action.

**I.      BACKGROUND**

On March 23, 2026, the Court issued its Second Screening Order Requiring a Response from Plaintiff. (Doc. 20.) More specifically, following screening, the Court found the second amended complaint failed to state any cognizable claim against any named defendant. (*Id*. at 5-15.) Plaintiff was directed to file a third amended complaint curing the deficiencies identified in the order, or, alternatively, to file a notice of voluntary dismissal within 30 days. (*Id*. at 15-16.)

Also on March 23, 2026, Plaintiff filed an untitled document docketed as "Supplement (Exhibit A) … to Second Amended Prisoner Civil Rights Complaint." (Doc. 21.) The following day, Plaintiff filed an untitled document docketed as a "Notice of Willingness to Proceed on Claims." (Doc. 22.)

On March 25, 2026, the Court issued its Order Striking Plaintiff's Filings of March 23 and March 24, 2026. (Doc. 23.) The Court determined both filings were "dated prior to the Court's second screening order," meaning Plaintiff had not yet received the second screening order. (*Id*. at 2.) Further, the Court explained that because there were "no cognizable claims upon which to proceed," Plaintiff's notice was not applicable. (*Id*. at 2-3.) The Court directed Plaintiff to file a third amended complaint, curing the deficiencies identified in the second screening order, or a notice of voluntary dismissal no later than April 22, 2026. (*Id*. at 3-4.)

On April 3, 2026, Plaintiff filed a third amended complaint. (Doc. 24.)

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III. PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"

2

*Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

## B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation") (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740,

3

743 (9th Cir. 1978) (citation omitted).

## C.  Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*

4

*Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

**IV.   DISCUSSION**

**A.  Plaintiff's Third Amended Complaint**

Plaintiff names the following individuals, employed at the California Substance Abuse Treatment Facility (SATF), as defendants in this action:

> Correctional Officer Stohl
>
> Correctional Officer Reaves
>
> Correctional Officer Soares
>
> Recreational Therapist M. Dube Gansaga
>
> Recreational Therapist Tobey
>
> Correctional Officer Valasquez
>
> Correctional Officer Logan
>
> Correctional Officer Fernandez
>
> Correctional Lieutenant Sterns
>
> Correctional Lieutenant Fontenote
>
> Correctional Sergeant J. Tuman
>
> Correctional Sergeant B. Garza
>
> Padilla
>
> Brazil
>
> Sauceda

(Doc. 24 at 1-2.) Plaintiff seeks to have a rule violation report removed, a "total of $16,000,000.00 (Sixteen Million Dollars) per total [occurrence] by 16 defendants," and $100,000 in penalties pursuant to 28 U.S.C. sections 241 and 242. (*Id*. at 13.)

//

//

//

5

**B. Plaintiff's Claims**

Initially, the Court notes Plaintiff did not use the Court's amended complaint form in its entirety. Rather, Plaintiff used the first two pages of the form (*see* Doc. 24 at 1-2), then included a typed document titled "Third Amended Complaint" (*id*. at 3-13). Thereafter, Plaintiff presents nineteen claims, often without identifying the specific constitutional violation being alleged.  The Court addresses each claim below.

Claim One

Plaintiff alleges that on October 25, 2023, he was transferred from the California Medical Facility (CMF) to SATF without his property. (Doc. 24 at 4.) He states the "other five inmates in the van were allowed to bring their property." (*Id*.) Plaintiff alleges "CMF Property Officer Cox" told him that "'[i]f you 602 your property, you will never see it.'" (*Id*.) Plaintiff asserts the next day he "filed a form 602 grievance, log #4706402." (*Id*.)

The above allegations comprise the entire claim. It is unclear what constitutional claim Plaintiff intended to present because he fails to identify any, notwithstanding the Court in its earlier screenings order set forth the legal standards governing claims under the First, Fifth, Eighth, and Fourteenth Amendments to the U.S. Constitution to facilitate Plaintiff's ability to cognizably plead such claims. *See* (Doc. 16 at 16-24; Doc. 20 at 8-15.). Nor do any of the allegations relate to any action by any named defendant. "CMF Property Officer Cox" is not named in this action. No facts alleged amount to a due process violation against any SATF defendant named in this action. In sum, Plaintiff fails to state a claim upon which relief can be granted.

Claim Two

Plaintiff alleges he was assigned to a dormitory that violated Health and Safety codes. (Doc. 24 at 4.) He recites: "'There is an objective component of cruel conditions because of serious safety issues from being exposed to rain inside the cell causing flooding through the roof.'" (*Id*.) Plaintiff states that despite work orders submitted prior to his arrival at SATF, "SATF still 'demonstrated serious deprivations of basic human needs.'" (*Id*.) He contends the facility had "'structural deterioration' and 'was already in the worse condition [and] in need of

6

serious roof repairs.'" (*Id.*) Plaintiff contends that "is demonstrated through F-3 Building logbooks and work orders from 2022, along with 'serious leaks during rainstorms.'" (*Id.*) He maintains "[b]uilding officers would not move" him and he was "subjected to several health and safety issues." (*Id.*) Plaintiff states he "filed a 602 grievance, log #295669, for 'emergency roof repair [which] was ignored." (*Id.*)

The above allegations comprise the entirety of claim two. The Court presumes Plaintiff intended to present an Eighth Amendment conditions of confinement claim. However, despite being provided with the legal standards applicable to such a claim in the Court's earlier screening orders (*see* Doc. 16 at 16-17; Doc. 20 at 8-9), Plaintiff has once again failed to state a cognizable claim.

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer*, 511 U.S. at 832; *Morgan v. Morgensen,* 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks & citations omitted). To establish a violation of this duty, a prisoner must first demonstrate an objectively serious deprivation, one that amounts to the denial of "the minimal civilized measures of life's necessities." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Second, a prisoner must demonstrate that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Johnson*, 217 F.3d at 733. A prison official is liable for denying an inmate humane conditions of confinement only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Here, Plaintiff alleges no facts regarding any action by any named defendant. To the extent Plaintiff intended his references to "SATF" or to "Building officers" to be sufficient, he is mistaken. As the Court previously advised Plaintiff in its second screening order, "[s]imply grouping some or all defendants" together, and assigning them generalized conduct, is

insufficient. (*See* Doc. 20 at 15, *citing Gibson v. City of Portland*, 165 F.4th 1265, 1287-89 (9th Cir. 2026).) Plaintiff is required to "identify the conduct alleged to have violated [his] constitutional rights as to each defendant for each claim" by "stating what happened, when it happened, and how each defendant was involved." (*Id*.) Significantly, as before, Plaintiff alleges no facts from which any inference reasonably may be drawn that any named defendant "knew that [Plaintiff] faced excessive risk to his health or safety and disregarded that risk." (*See id.* at 9.) Put another way, even presuming Plaintiff has met the first, objective component of an Eighth Amendment conditions of confinement claim, by alleging the roof leaks in his housing facility were sufficiently serious, Plaintiff fails to allege any facts to show prison officials acted with deliberate indifference because they knew of and disregarded an excessive risk to his health or safety. He fails to explain how logbooks and work orders gave any defendant in this action — none of whom are identified in Claim 2 — knowledge of an excessive risk to his health or safety. *Barren*, 152 F.3d at 1194 ("plaintiff must allege facts, not simply conclusions, that *show that an individual was personally involved* in the deprivation of his civil rights" [italics added]).

In short, Plaintiff fails to state a cognizable Eighth Amendment conditions of confinement claim against any named defendant.

### Claim Three

Plaintiff alleges that on December 1, 2023, he filed two grievances after not receiving his property. (Doc. 24 at 4.) He asserts his mother sent him a package valued at $220.69 but SATF switched that package with another valued at $26.00 in retaliation for Plaintiff having filed a grievance, "recalling comments by the Property Officer on October 25, 2023" that he would never see his property if he filed a grievance. (*Id*. at 4-5.) Plaintiff alleges he refused the $26.00 package on December 21, 2023, and filed a grievance on January 9, 2024. (*Id*. at 5.)

The above allegations comprise the entirety of claim three. The Court presumes Plaintiff intended to present a First Amendment retaliation claim. Notwithstanding the Court in its earlier screening orders provided Plaintiff with the governing legal standards for such a retaliation claim (*see* Doc. 16 at 19-20; Doc. 20 at 11-12), Plaintiff fails to state a claim upon which relief can be granted.

8

Prisoners have a First Amendment right to file prison grievances and lawsuits and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882-83 (9th Cir. 2011); *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff has failed to allege any facts against any named defendant in this action. Plaintiff's reference to the "Property Officer on October 25, 2023" concerns CMF employee Cox, not any individual employed at SATF and named in Plaintiff's third amended complaint. Alleging "the warehouse was mad" because he filed a grievance is insufficient because "the warehouse" is not an individual. Again, the Court previously admonished Plaintiff to identify an individual or individuals who he believes violated his constitutional rights and then allege sufficient facts concerning the individual's actions. To state a cognizable First Amendment retaliation claim, Plaintiff must allege facts to show a specific individual or individuals took some adverse action against him — like switching out the packages — because he filed a grievance, that such action chilled the exercise of Plaintiff's First Amendment rights, and that "the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68.

9

Because Plaintiff has failed to identify any individual or individuals named as defendants in this action have retaliated against him by asserting facts that meet the five requirements in *Rhodes*, he fails to state a cognizable First Amendment retaliation claim against any named defendant.

Claim Four

In his fourth claim for relief, Plaintiff alleges Defendant Stohl allowed another inmate to interview Plaintiff for a job assignment. (Doc. 24 at 5.) Next, Plaintiff alleges he was interviewed by Stohl "related to a grievance Plaintiff filed against Stohl." (*Id.*)

The above allegations comprise the entirety of claim four. The Court cannot discern from these sparse facts what constitutional claim Plaintiff intended to present. If Plaintiff intended to assert a First Amendment retaliation claim against Stohl, he has failed to allege sufficient facts concerning the elements of such a claim. *See Rhodes*, 408 F.3d at 567-68. Stated another way, it is unclear how Stohl's allowing another inmate to interview Plaintiff for a job assignment was "because of" Plaintiff's having filed a grievance at some unidentified time, and Plaintiff fails to allege any conduct by Stohl that can be reasonably inferred to have chilled the exercise of Plaintiff's First Amendment rights or that did not reasonably advance a legitimate correctional goal. In sum, consistent with the governing legal standards the Court summarized for Plaintiff in its earlier screening orders (*see* Doc. 16 at 19-20; Doc. 20 at 11-12), Plaintiff fails to state a cognizable First Amendment retaliation claim against Stohl or any other named defendant.

Claim Five

In his fifth claim for relief, Plaintiff alleges that on January 14, 2024, SATF improperly confiscated his television antenna. (Doc. 24 at 5.) Next, he alleges that on that same date, Defendant Stohl used Defendants Soares and Gansaga to file a false rule violation report (RVR) against Plaintiff, claiming overfamiliarity with Gansaga. (*Id.*) Plaintiff states he asked Gansaga if she wanted to be a sponsor for a self-help ground called "Truth to Troubled Youths and Parents" that Plaintiff was trying to start. (*Id.*)

The above allegations comprise the entirety of claim five. Again, the Court is unclear what constitutional claims Plaintiff intended to assert and against whom. Nevertheless, the Court

10

presumes Plaintiff intended to assert Fourteenth Amendment due process claims against Stohl, Soares, and Gansaga.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563-71. Confrontation and cross examination are not generally required. *Id.* at 567. As long as the five minimum *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994).

"When prison officials limit a prisoner's right to defend himself they must have a legitimate penological interest." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life

11

which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985); *see Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996); *Koenig*, 971 F.2d at 423; *Zimmerlee v. Keeney*, 831 F.2d 183, 187-88 (9th Cir. 1987)(per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board ...." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see Touissaint v. McCarthy*, 926 F.2d 800, 802-03 (9th Cir. 1991); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached ....as [t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill*, 472 U.S. at 455-57.

To the extent Plaintiff intended to assert Fourteenth Amendment due process violations against Defendants Stohl, Soares, or Gansaga concerning any disciplinary hearing arising from the RVR, he fails to state a claim. Plaintiff alleges no facts to indicate the five minimum *Wolff* requirements were not met following issuance of the RVR. *Wolff*, 418 U.S. at 563-71; *Walker*, 14 F.3d at 1420.

To the extent Plaintiff alleges the RVR was falsified, the creation of false evidence, standing alone, is not actionable under section 1983. *See Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987) (independent right to accurate prison record has not been recognized); *Johnson v. Felker*, No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere falsification of a report does not give rise to a claim under section 1983," citations omitted). Moreover, "plaintiff cannot state a cognizable Eighth Amendment violation based on an allegation that defendant[ ] issued a false rule violation against plaintiff." *Jones v. Prater*, No. 2:10-cv-01381 JAM KJN P, 2012 WL 1979225, at *2 (E.D. Cal. Jun. 1, 2012); *see Youngs v. Barretto*, No. 2:16-cv-0276 JAM AC P, 2018 WL 2198707, at *3 (E.D. Cal. May 14, 2019) (noting that issuance of false rules violation report does not rise to the level of cruel and unusual punishment).

Next, the Due Process Clause protects prisoners from being deprived of property without due process of law. *Wolff*, 418 U.S. at 556. And prisoners have a protected interest in their

12

personal property. *Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974). However, while an authorized, intentional deprivation of property is actionable under the Due Process Clause, *see Hudson v. Palmer*, 468 U.S. 517, 532, n.13 (1984) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985), neither negligent nor unauthorized intentional deprivations of property by a state employee "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533. The Due Process Clause is violated only when the agency "prescribes and enforces forfeitures of property without underlying statutory authority and competent procedural protections." *Nevada Dept. of Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (citing *Vance v. Barrett*, 345 F.3d 1083, 1090 (9th Cir. 2003), internal quotations omitted).

An authorized, intentional deprivation of property is carried out pursuant to established state procedures, regulations, or statutes. *Logan*, 455 U.S. at 436; *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987). It is permissible if carried out pursuant to a regulation that is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

"An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533. Thus, where the state provides a meaningful post-deprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. California law provides an adequate post-deprivation remedy for a prisoner plaintiff's loss and he therefore may not pursue a due process claim arising out of the unlawful confiscation of his personal property. *Barnett v. Centoni*, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§810-895).

Here, as concerns Plaintiff's television antenna that he claims was "unjustly confiscated," Plaintiff's claim concerns an unauthorized intentional deprivation of property. And because California provides a meaningful post-deprivation remedy for unauthorized intentional deprivations of property, Plaintiff may not pursue a due process claim arising from the

13

confiscation of his television antenna. *Hudson*, 468 U.S. at 533; *Barnett*, 31 F.3d at 816-17.

In sum, Plaintiff has failed to state a Fourteenth Amendment due process claim against any named defendant.

<u>Claim Six</u>

In his sixth claim for relief, Plaintiff contends that on January 21, 2024, he filed a grievance concerning retaliation and on January 31, 2024, he filed a grievance regarding Defendant Stohl. (Doc. 24 at 5.) Next, Plaintiff asserts that on February 1, 2024, Stohl retaliated by going to Facility G yard from Facility F yard "and used a mental health supervisor to place Plaintiff into a crisis bed." (*Id.*) Plaintiff states he was neither suicidal nor homicidal. (*Id.*) He states he filed a grievance against Stohl. (*Id.*) Also on February 1, Plaintiff asserts "Property Officer McNarry[1] 'said the reason staff are sending your package all over the prison is because you write 602s.'" (*Id.*) On February 4, 2024, Plaintiff filed a grievance because he was "being illegally housed in a crisis center" in violation of his Eighth Amendment rights. (*Id.* at 6.) Lastly, Plaintiff alleges he never received his package and he filed another grievance on February 6, 2024. (*Id.*)

The above allegations comprise the entirety of claim six. The Court presumes Plaintiff is asserting a First Amendment retaliation claim against Defendant Stohl as Stohl is the only named defendant referenced in the claim. Here, liberally construing the third amended complaint and accepting all facts as true, Plaintiff states a cognizable First Amendment retaliation claim against Defendant Stohl. Plaintiff sufficiently alleges that he filed two grievances in late January 2024, and on February 1, 2024, because he did so, Stohl "used a mental health supervisor to place Plaintiff into a crisis bed" without justification, inferring Stohl did so to chill Plaintiff's First Amendment exercise regarding the filing of grievances and in the absence of a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68; *Brodheim*, 584 F.3d at 1269, 1271; *McCollum*, 647 F.3d at 882-83.

In short, Plaintiff states a cognizable First Amendment retaliation claim against Defendant

---

[1] This individual is not named as a defendant in the action.

14

Stohl but fails to state any other cognizable claim against any other defendant in claim six.

Claim Seven

In Plaintiff's seventh claim for relief, he alleges that he filed several grievances against Defendants Soares, Sauceda, Stohl, Padilla, Gansaga, and Sterns. (Doc. 24 at 6.) Plaintiff further asserts Gansaga used Soares to file a false RVR. (*Id.*) Plaintiff states he was an Enhanced Outpatient Program (EOP) inmate and "Defendants used false information" to file a false RVR concerning overfamiliarity and Gansaga. (*Id.*) He maintains that on February 24, 2024, Defendant Sterns found him guilty of the RVR. (*Id.*) Plaintiff also asserts his "602 for due process violations log #537655 was granted" but Defendants Stohl and Sterns did not "re-hear the RVR" despite the fact the "order for the 602 was to be reissued and reheard." (*Id.*) Plaintiff reasserts he never received "another hearing." (*Id.*)

The above allegations comprise the entirety of claim seven. The Court will presume Plaintiff intended to assert claims against Soares, Sauceda, Stohl, Padilla, Gansaga, and Sterns as each is identified in the first sentence.

As noted above in the discussion regarding claim five, the creation of false evidence, standing alone, is not actionable under section 1983. *Hernandez*, 833 F.2d at 1319; *Johnson*, 2013 WL 6243280, at *6. The issuance of a false rule violation does not state a cognizable Eighth Amendment violation. *Jones*, 2012 WL 1979225, at *2; *Youngs,* 2018 WL 2198707, at *3. Therefore, to the extent Plaintiff intended to assert Eighth Amendment claims against Defendants Soares, Sauceda, Stohl, Padilla, Gansaga, and Sterns for creating a false RVR, he fails to state a cognizable claim. That does not end the Court's consideration however as concerns Plaintiff's factual allegations in claim seven.

A false disciplinary report or RVR can state a cognizable claim when it is alleged that the false RVR was filed in retaliation for the prisoner's having exercised a constitutional right, and when a prisoner alleges that he was not afforded procedural due process in a proceeding concerning a false report. *Richardson v. Tuman*, No. 1:18-CV-01166-EPG-PC, 2019 WL 669569, at *6 (E.D. Cal. Feb. 19, 2019); *see Hines v. Gomez*, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise

15

due process concerns"). More specifically, when a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff*, 418 U.S. at 563-70.

To the extent Plaintiff alleges that Soares, Sauceda, Stohl, Padilla, Gansaga, and Sterns issued a false RVR because he filed grievances against them, liberally construing the third amended complaint and accepting all facts as true, Plaintiff states cognizable claims against Defendants Gansaga and Soares because he asserts personal participation by those two individuals. Specifically, he alleges Gansaga "used" Soares and information gleaned from his status as an EOP inmate "to file false overfamiliarity charges" involving Gansaga after Plaintiff filed grievances against Soares and Gansaga. But the only facts alleged as to Sauceda, Stohl, Padilla, and Sterns relate only to Plaintiff having filed grievances against Sauceda, Stohl, Padilla, and Sterns – in other words, those facts by themselves do not implicate Sauceda, Stohl, Padilla, or Sterns in the creation of the false RVR.

Next, as concerns Plaintiff's allegations that Defendants Stohl and Sterns did not "re-hear the RVR" after it was ruled following a grievance determination that the RVR should be "reheard," liberally construing the third amended complaint and accepting all facts as true, Plaintiff plausibly alleges Fourteenth Amendment due process violations against Defendants Stohl and Sterns for their refusal to rehear the RVR, meaning Plaintiff did not receive the required *Wolff* protections.

In sum, as concerns claim seven, Plaintiff states cognizable First Amendment retaliation claims against Defendants Soares and Gansaga, and cognizable Fourteenth Amendment due process violations against Defendants Stohl and Sterns. But he has failed to state any other cognizable claim against any other named defendant.

///

16

Claim Eight

In his eighth claim for relief, Plaintiff alleges that on March 2, 2024, he filed another grievance "for being extorted and fabricating documents to stop Plaintiff from getting his package." (Doc. 24 at 6-7.)

The above allegations comprise the entirety of claim eight. The Court cannot discern from these sparse facts what constitutional claim Plaintiff intended to present. Even liberally construing the third amended complaint and accepting all facts as true, by simply asserting he filed a grievance on March 2, 2024, Plaintiff has failed to allege any cognizable claim against any named defendant. No named defendant is even identified nor are any additional facts asserted that would remotely suggest a constitutional violation.

Claim Nine

In Plaintiff's ninth claim for relief, he asserts that on March 5, 2024, he filed a grievance "on Gavin Newsom because every prison" where Plaintiff is housed leads to retaliatory transfers by its administration. (Doc. 24 at 7.) Next, Plaintiff alleges that he filed a grievance on March 12, 2024, because "Sergeant Diaz[2] placed a false safety chrono for Plaintiff filing a 602." (*Id.*)

The above allegations comprise the entirety of claim nine. The Court cannot discern from these sparse facts what constitutional claim Plaintiff intended to present. Even liberally construing the third amended complaint and accepting all facts as true, by simply asserting he filed a grievance on March 5, 2024, Plaintiff has failed to allege any cognizable claim against any named defendant. No named defendant is even identified — Governor Gavin Newsom is not a defendant in this action —nor are any additional facts asserted that would clearly identify a constitutional violation. As concerns any "false safety chrono" by "Sergeant Diaz," those allegations fail to state a claim because "Sergeant Diaz" is not named as a defendant in this action and no other facts alleged pertain to any other named defendant.

In short, Plaintiff fails to state any cognizable claim against any named defendant in claim nine.

[2] This individual is not named as a defendant in this action.

17

Claim Ten

In his tenth claim for relief, Plaintiff alleges that on May 14, 2024, he filed a grievance against "Nurse Dazenski,"[3] a coworker of Defendant Tobey, "for removing a RAC-credit …." (Doc. 24 at 7.) On that same day, Defendant Tobey "saw Plaintiff outside the office door through a very big window and slammed the door into Plaintiff's face, smiled and walked away." (*Id*.) Plaintiff contends Tobey violated his Eighth Amendment right to be free from excessive force. (*Id*.) Further, Plaintiff asserts that he filed a second grievance against Dazenski on July 28, 2024. (*Id*.)

The above allegations comprise the entirety of claim ten. Initially, the Court notes that no cognizable claim is stated involving "Nurse" or recreational therapist Dazenski because Dazenski is not named as a defendant in this action.

Next, as concerns Plaintiff's claim of Eighth Amendment excessive force involving Defendant Tobey, as the Court previously admonished Plaintiff in its earlier screening orders (*see* Doc. 16 at 17-18; Doc. 20 at 9-10), an Eighth Amendment excessive force claim requires he demonstrate that a correctional officer used excessive and unnecessary force and harmed Plaintiff for the purpose of causing harm and not as part of a good faith effort to maintain security. *Hudson v. McMillan*, 503 U.S. 1, 6 (1992); *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). To determine whether the use of force violates the Eighth Amendment, the court should consider the "extent of injury ..., the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7. The extent of injury suffered by the plaintiff may indicate the amount of force applied. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff fails to state a cognizable Eighth Amendment excessive force claim against Defendant Tobey. This is so because Plaintiff continues to allege as he did in earlier complaints that Tobey

---

[3] This individual is not named as a defendant in this action.

18

"slammed the door into Plaintiff's face, smiled, and walked away." But Plaintiff fails to explain how slamming a door "into his face" resulted in any injury. Such facts only indicate a door was slammed close to Plaintiff's face – nothing indicates Plaintiff was injured in any way. In the absence of an injury, no harm was caused by Defendant Tobey's action. As pled, these facts merely indicate Tobey closed a door and Plaintiff was offended by the action. In short, because Plaintiff has not pled any facts to indicate he suffered any injury as a result of Tobey's action, Plaintiff fails to state a cognizable Eighth Amendment claim against Tobey, or against any other named defendant.

Claim Eleven

In Plaintiff's eleventh claim for relief, he alleges that on June 12, 2024, he filed "another grievance for distinguishing differences (discrimination) and favoritism" against Defendants Brazil, Fernandez, and others. (Doc. 24 at 7.) Next, he states "[a]ll Defendants continued to harass" him by threating to fire him from his ADA jobs. (*Id*.) Further, Plaintiff alleges he filed a grievance against Defendants Tuman and Fontenote, and Captain Smith[4] on June 16, 2024, because he was "receiving retaliation." (*Id*. at 7-8.) He also claims his legal mail was being tampered with and he was prevented from going to the law library when he had court deadlines and was denied legal materials, and states: "(602's were granted.)" (*Id*. at 8.) Plaintiff further alleges that on June 18, 2024, Defendant Fernandez threatened him with an RVR for exercising his "worker" rights. (*Id*.) On June 21, 2024, Plaintiff filed a grievance against Fernandez alleging retaliation, harassment, and discrimination. (*Id*.) He asserts he was the only ADA worker prevented from assisting other ADA inmates in other areas, and that Fernandez threatened him with RVRs and "being fired if he helped other inmates write 602's or medical forms" and states the grievance  was granted. (*Id*.)

The above allegations comprise the entirety of claim eleven. The Court presumes Plaintiff intended to assert First Amendment retaliation claims against Defendants Brazil, Fernandez, Tuman, and Fontenote.

---

[4] This individual is not named as a defendant in this action.

19

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff states a cognizable First Amendment retaliation claim against Defendant Fernandez. Plaintiff alleges that on June 18, 2024, Fernandez threatened to issue Plaintiff an RVR for exercising his ADA "worker" rights, that he filed a grievance against Fernandez three days later, and that Fernandez continued to threaten Plaintiff with an RVR if he assisted other ADA inmates with grievances or medical forms. *Rhodes*, 408 F.3d at 567-68; *Brodheim*, 584 F.3d at 1269, 1271; *McCollum*, 647 F.3d at 882-83. Nevertheless, Plaintiff fails to state a plausible retaliation claim against Brazil, Tuman, or Fontenote. This is so because he merely asserts he filed a grievance against Brazil, Tuman, and Fontenote on June 16, 2024, because he was "receiving retaliation." It is unclear whether Plaintiff's allegations of legal mail tampering or any denial of access to the law library or legal materials even relate to any action by Brazil, Tuman, or Fontenote. Plaintiff's claim is vague and conclusory – he fails to explain what action Brazil, Tuman, or Fontenote took in connection with the alleged tampering of his legal mail or denial of access to the law library or legal materials. *Iqbal*, 556 U.S. at 678; *Doe I*, 572 F.3d at 681 (courts "are not required to indulge unwarranted inferences"); *Barren*, 152 F.3d at 1194 ("plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights"). As pled, Plaintiff's allegations are nothing more than legal conclusions. *Neitzke*, 490 U.S. at 330 n.9.

To conclude, in claim eleven, Plaintiff states a cognizable First Amendment retaliation claim against Defendant Fernandez but fails to state a plausible retaliation claim against Defendants Brazil, Tuman, Fontenote, or any other named defendant.

<u>Claim Twelve</u>

In his twelfth claim for relief, Plaintiff alleges that on June 24, 2024, Defendant Logan provided Plaintiff's grievances to another inmate, and as a result, Plaintiff "received several random acts of retaliation." (Doc. 24 at 8.) And on June 25, 2024, when Plaintiff went to dinner, his tablet "ended up in" the same cell "as the inmate who received Plaintiff's mail from Defendant Fernandez." (*Id.*) Further, Plaintiff alleges that on June 31, 2024, he filed a grievance

on "Defendant Valasquez for using false confidentials to roll up inmates." (*Id.*) [5] Next, Plaintiff states he filed another grievance against Defendant Logan on July 12, 2024, because Logan retaliated against Plaintiff for having filed the earlier grievance concerning Logan giving Plaintiff's mail to another inmate and refusing to provide Plaintiff with his mail. (*Id*.) Finally, Plaintiff alleges that he filed a grievance against Defendant Reaves on July 23, 2024, because Reaves yelled at Plaintiff for pushing inmate Alpanion's wheelchair — Reaves claimed Alpanion could push himself —while he was assigned as an ADA worker. (*Id*. at 8-9.)

The above allegations comprise the entirety of claim twelve. The Court presumes Plaintiff intended to assert First Amendment retaliation claims against Defendants Logan, Valasquez, and Reaves.

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff fails to state a cognizable First Amendment retaliation claim against Defendants Logan, Valasquez, or Reaves. As concerns Logan, Plaintiff states Logan's adverse action on June 24, 2024, was to give another inmate his grievances – but no facts are alleged that would permit the drawing of a reasonable inference that Logan did so because Plaintiff had engaged in some earlier protected conduct, or that Logan's action chilled Plaintiff's First Amendment rights. Indeed, Plaintiff filed a second grievance against Logan. And with regard to the grievance Plaintiff filed against Logan on July 12, 2024, Plaintiff's allegation is nothing more than a legal conclusion: that Logan was retaliating against him for filing the earlier grievance. *Neitzke*, 490 U.S. at 330 n.9. No facts are alleged indicating that Logan took some action between June 24 and July 12 *because* Plaintiff was engaged in protected conduct and that that action chilled Plaintiff's First Amendment rights and did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. As concerns Defendant Valasquez, Plaintiff fails to state a cognizable claim because, again, he merely asserts he filed a grievance against Valasquez in June 2024. No facts are alleged to indicate Valasquez took any adverse action against Plaintiff because Plaintiff was

---

[5] There are only 30 days in June. The Court presumes this was a typographical error and assumes for purposes of screening that Plaintiff intended to write June 30, 2024.

21

engaged in protected conduct (filing grievances) or that any action by Valasquez chilled Plaintiff's First Amendment rights and did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. Lastly, as concerns Defendant Reaves, Plaintiff merely alleges he filed a grievance against Reaves *after* Reaves yelled at him for performing his ADA worker duties. No facts indicate Reaves retaliated against Plaintiff after Plaintiff filed the grievance – meaning, after Plaintiff engaged in earlier protected activity.

In short, Plaintiff fails to state First Amendment retaliation claims against Defendants Logan, Valasquez, and Reaves, or any other named defendant in this action.

### Claim Thirteen

In Plaintiff's thirteenth claim for relief, he alleges Defendants Fontenote and Tuman interviewed him on an unspecified date concerning Defendant Reaves's conduct "and further retaliated against Plaintiff by threatening to fire him." (Doc. 24 at 9.) Next, Plaintiff claims he filed another grievance on July 26, 2024, against "Defendant [not identified]" for retaliation and discrimination. (*Id*.) Plaintiff then writes: "Sanches[6] interfered and would not allow Plaintiff to perform specific job duties." (*Id*.) Plaintiff states that "[e]very time" he helped an ADA inmate fill out a form, he was "harassed and the inmate was told Plaintiff cannot help them." (*Id*.) He contends "Defendant" slandered him and told several inmates not to get advice from Plaintiff. (*Id*.) Next, Plaintiff alleges that on July 31, 2024, he filed "another" grievance against "Fernandez, Reaves, Mental Health Supervisor Ward[7]" for threatening to issue "128's" and "115's" for Plaintiff having assisted other inmates with disabilities, constituting "retaliation and 'disability discrimination' under state law." (*Id*.) Thereafter, Plaintiff contends the actions "against Plaintiff was done sadistically and maliciously," constituting cruel and unusual punishment under the Eighth Amendment "and the state of California" and in violation of the Equal Protection clause of the Fourteenth Amendment." (*Id*.) He maintains the violations impacted his mental health, causing anxiety and conflict with his coworkers. (*Id*. at 9-10.) Lastly,

---

[6] This individual is not named as a defendant in this action.

[7] This individual is not named as a defendant in this action.

22

Plaintiff alleges that on an unspecified date he "filed another" grievance "against Defendant Fontenote's 602 interview [by] retaliatory statements accused Plaintiff of being argumentative and not being able to make friends" and that Fontenote told him that unidentified "'defendants are out to get you over your 602's (you better watch out).'" (*Id*. at 10.)

The above allegations comprise the entirety of claim thirteen. The Court presumes Plaintiff intended to assert First Amendment retaliation claims against Defendants Fontenote, Tuman, Reaves, and Fernandez because their names appear in the factual allegations.

Liberally construing the third amended complaint and accepting all facts as true, the Court finds Plaintiff has failed to allege cognizable First Amendment retaliation claims against Defendant Tuman. Plaintiff merely alleges that on some unspecified date, he was interviewed by Tuman about Reaves. That fails to state a claim upon which relief can be granted because no adverse action by Tuman is alleged. *Rhodes*, 408 F.3d at 567-68.

Next, liberally construing the complaint, the Court finds Plaintiff has alleged plausible First Amendment retaliation claims against Fernandez and Reaves. As concerns Fernandez and Reaves, Plaintiff alleges he filed "another" grievance on July 31, 2024, because Fernandez and Reaves were threatening to issue "128's" and RVRs because Plaintiff continued to assist other ADA inmates. Those facts are sufficient to indicate Plaintiff had engaged in the protected conduct of filing earlier grievances, and that Fernandez and Reaves's threats were because of the earlier grievances, and it can be reasonably inferred that Plaintiff's First Amendment rights were chilled and there was no legitimate correctional basis for Fernandez and Reaves to do so. *Rhodes*, 408 F.3d at 567-68.

Next, as concerns Defendant Fontenote, Plaintiff fails to allege a First Amendment retaliation claim against Fontenote. Although Plaintiff alleges he filed "another grievance" against Fontenote, there are no facts that would allow the Court to conclude retaliation occurred. Plaintiff does not indicate when the interview involving Fontenote occurred. Moreover, it is unclear from the allegations whether Fontenote told Plaintiff he was "being argumentative" and was not "able to make friends" on a date earlier than Fontenote purportedly told Plaintiff that other unidentified defendants were "out to get" him and that he "better watch out." The facts

23

alleged concerning Fontenote are simply vague and conclusory. *Iqbal*, 556 U.S. at 678; *Doe I*, 572 F.3d at 681; *Barren*, 152 F.3d at 1194.

Lastly, to the extent Plaintiff intended to assert a Fourteenth Amendment Equal Protection violation against any named defendant, he fails to do so. Plaintiff offers nothing more than a legal conclusion in the absence of specific factual allegations. *Neitzke*, 490 U.S. at 330 n.9. The same is true of his vague and conclusory reference to any state constitutional provision. *Id.*

In sum, in his thirteenth claim, Plaintiff plausibly alleges First Amendment retaliation claims against Defendants Fernandez and Reaves but fails to allege any other cognizable claim against any other named defendant.

Claim Fourteen

In his fourteenth claim for relief, Plaintiff alleges as follows:

> On August 1, 2024, Plaintiff filed another 602 grievance … against Defendants Fernandez, Brazil, Sanchez, and Reaves, along with non-party Cajas, for retaliation for "denying Plaintiff a skilled position and preventing Plaintiff from helping ADA inmates" in violation of California's Fifth Amendment []. That day, Defendant Fernandez "asked an inmate to assault Plaintiff" and non-party Sanchez asked inmate Basquez to assault Plaintiff' in violation of the Eighth Amendment. []

(Doc. 24 at 10.)

The Court construes Plaintiff's fourteenth claim to assert First Amendment retaliation claims against Defendants Fernandez and Brazil and an Eighth Amendment threat to safety claim against Defendant Fernandez.

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff fails to allege retaliation claims against Defendants Fernandez and Brazil. This is so because no facts are alleged concerning any adverse action by Fernandez or Brazil. *Rhodes*, 408 F.3d at 567-68. All that Plaintiff alleges is that he filed a grievance on August 1, 2024, against these individuals; filing a grievance does not state a retaliation claim.

Concerning a construed threat to safety claim against Defendant Fernandez, prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America,*

24

714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33 & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Id.*

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). As "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297 (internal quotations marks, emphasis, and citations omitted).

To state a claim, the Eighth Amendment requires allegations sufficient to plausibly show that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Farmer*, 511 U.S. at 847. The objective component of an Eighth Amendment requires that a prisoner show he was deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff plausibly alleges a threat to safety claim against Defendant Fernandez because he alleges Fernandez asked another inmate "to assault Plaintiff" on August 1, 2024, after Plaintiff "filed

25

another grievance" naming Fernandez. *Wilson*, 501 U.S. at 297. Although sparse, those facts, liberally construed, show that Fernandez acted with deliberate indifference to Plaintiff's health and safety. *Labatad,* 714 F.3d at 1160.

Claim Fifteen

In Plaintiff's fifteenth claim for relief, he contends that on August 2, 2024, he filed "a retaliation grievance … after Defendant Brazil and non-party Sanchez" handcuffed him and questioned him "about an investigation against [unspecified] Defendants." (Doc. 24 at 10.) Plaintiff asserts his belief that "this was 'an attempt to create a false safety claim'" and that Defendants' "motivation was to get rid of Plaintiff" for filing grievances. (*Id*.) Next, Plaintiff alleges that on August 9, 2024, he filed a grievance because Brazil threatened to fire him for assisting another inmate regarding ADA accommodations. (*Id*.) And on August 22, 2024, Plaintiff filed a grievance against "all Defendants" for retaliating against him by creating "false enemies to use as a reason to throw Plaintiff off the yard." (*Id*.)

The above allegations comprise the entirety of claim fifteen. The Court construes these allegations to assert a First Amendment retaliation claim against Defendant Brazil. To the extent Plaintiff references a grievance involving "all Defendants" retaliating against him, filing a grievance does not state a retaliation claim upon which relief can be granted and references to "all Defendants" are insufficient.

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff fails to state a retaliation claim against Defendant Brazil. It is unclear how cuffing Plaintiff to interview him about "an investigation" against unspecified "Defendants" was an adverse action by Brazil because Plaintiff filed a grievance against unknown defendants. Presumably the grievance required investigation and the fact Brazil was involved in the investigation and interview does not state a claim. Nor is it clear why Plaintiff believes that incident was an "attempt to create a false safety claim." The remaining allegation involving Brazil is simply that Plaintiff filed a grievance on August 9, 2024, because Brazil threatened to fire Plaintiff for assisting another ADA inmate. No facts indicate Brazil issued this threat because Plaintiff engaged in some earlier protected conduct, or that Brazil intended to chill Plaintiff's First

26

Amendment rights, or that his action did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. Without more, those facts are vague and conclusory. *Iqbal*, 556 U.S. at 678.

In short, Plaintiff fails to allege any constitutional violation against any named defendant in his fifteenth claim for relief.

Claim Sixteen

Next, in his sixteenth claim for relief, Plaintiff alleges that on September 1, 2024, he filed a grievance against Defendant Valasquez for "using an inmate to threaten Plaintiff." (Doc. 24 at 10.) Further, Plaintiff alleges that on September 2, 2024, he filed a grievance against Defendant Fernandez for "using another inmate" to interfere with his job assignment and to create conflict. (*Id*. at 10-11.) He maintains that on September 3, 2024, he filed another grievance against Fernandez "for harassing Plaintiff for 'doing his ADA accommodations." (*Id*. at 11.) Plaintiff states that "[e]very time" he went to "D-section" to assist inmate Alpanion, Fernandez threatened to fire Plaintiff and abused his authority. (*Id*.) Lastly, Plaintiff states he filed a grievance on September 4, 2024, "for discrimination after ADA worker told he cannot stay while 'other ADA workers'" were permitted to remain with inmates "brought over from Medical." (*Id*.)

The above allegations comprise the entirety of claim sixteen. The Court construes these allegations to assert First Amendment retaliation claims against Defendants Valasquez and Fernandez.

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff fails to state a retaliation claim against Valasquez or Fernandez. Plaintiff's facts are limited to an allegation that he filed grievances against these individuals. No facts are alleged that would permit the drawing of a reasonable inference that Valasquez or Fernandez took adverse action *because* Plaintiff engaged in some earlier protected conduct, or that Valasquez or Fernandez intended to chill Plaintiff's First Amendment rights, or that their actions did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68. Finally, to the extent Plaintiff alleges he filed a grievance on August 3, 2024, in addition to the aforementioned deficiencies, Plaintiff fails to identify any named defendant.

27

<u>Claim Seventeen</u>

In Plaintiff's seventeenth claim for relief, he alleges that he filed a grievance on September 5, 2025, "directed towards" Defendants Fernandez, Reaves, Logan, and Valasquez "for using inmates to target Plaintiff." (Doc. 24 at 11.) Plaintiff contends he was threatened by inmates for filing grievances against custody staff. (*Id*.) Plaintiff states several of his grievances "were granted" and Plaintiff asserts he "can plausibly maintain a First Amendment selective discrimination as enforcement of a Defendant . . . to stop Plaintiff from doing his job." (*Id*.) Next, Plaintiff asserts that on September 9, 2024, he filed a grievance because Fernandez "fabricated a false confidential enemy to roll up Plaintiff," resulting in Plaintiff's move to "E-yard." (*Id*.)

The above allegations comprise the entirety of claim seventeen. The Court construes these allegations to assert First Amendment retaliation claims against Defendants Fernandez, Reaves, Logan, and Valasquez.

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff fails to state a retaliation claim against Reaves or Logan. As pled, Plaintiff's merely alleges he filed a grievance against these individuals. That is insufficient to state a claim upon which relief can be granted. Moreover, there are insufficient facts alleged to establish any causal connection between any action by Fernandez, Reaves, Logan, or Valasquez and inmate threats relating to the September 5, 2024, grievance. *Barren*, 152 F.3d at 1194 ("plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights").

As concerns Plaintiff's allegation that on September 9, 2024, he filed a grievance because Fernandez "fabricated a false confidential enemy to roll up Plaintiff," resulting in Plaintiff's move to "E-yard," the Court finds those facts sufficient to permit a reasonable inference that Fernandez's adverse action was in response to Plaintiff filing grievances, and that by falsifying a document regarding Plaintiff's purported enemies that would necessitate Plaintiff's move to another yard, Fernandez intended to chill Plaintiff's First Amendment rights and did not in the absence of a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

///

28

Claim Eighteen

In Plaintiff's eighteenth claim for relief, he alleges that on September 13, 2024, he was interviewed by a mental health clinician who told Plaintiff the reason he had so many enemies was because he filed grievances and that was why "staff" did not want Plaintiff "over there." (Doc. 24 at 11.) Next, Plaintiff asserts that on September 14, 2024, he filed a grievance "alleging his health and safety were put at risk when Defendant Stohl allowed several inmates to 'smoke spice and suboxone" in the dayroom and inmates' cells. (*Id*.) Moreover, Plaintiff contends that in a related grievance filed September 15, 2024, "against all [D]efendants and other Defendants not mentioned in this 602' for 'atypical and significant hardship … in relation' related to the 'ordinary incidents of prison life.'" (*Id*. at 11-12.)

The above allegations comprise the entirety of claim eighteen. The Court construes these allegations to assert a First Amendment retaliation claim against Defendant Stohl. To the extent Plaintiff intended to assert this claim against any other defendant, he fails to do so. As previously explained, vague references to "Defendants" or "all Defendants" fail to state a claim. *Barren*, 152 F.3d at 1194. As to bare legal conclusions. *Neitzke*, 490 U.S. at 330 n.9.

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff fails to state a retaliation claim against Defendant Stohl. As pled, Plaintiff merely alleges he filed a grievance against Stohl on September 14, 2024. No facts allege that Stohl's purported adverse action of allowing other inmates to "smoke spice" were taken because Plaintiff engaged in the protected activity of filing grievances, or that Stohl allowed other inmates to "smoke spice" in order to chill Plaintiff's First Amendment rights. *Rhodes*, 408 F.3d at 567-68.

Claim Nineteen

In his nineteenth claim for relief, Plaintiff alleges that on September 18, 2024, he "filed another grievance" because Defendant Fernandez "was asking inmate Baskings to assault Plaintiff." (Doc. 24 at 12.) Next, Plaintiff asserts that on September 19, 2024, he was moved back to "F-yard" where Defendant Stohl "retaliated along with several other defendants." (*Id*.) Plaintiff alleges Defendant Soares retaliated against him "with a false RVR a year ago from the date of Plaintiff's move, created false enemies." (*Id*.) Next, Plaintiff alleges he filed another grievance on

29

an unspecified date because Stohl "used 4 inmates as enemies to retaliate and moved Plaintiff off the yard," and stating his grievance "was granted." (*Id*.) On September 22, 2024, Plaintiff alleges he filed a grievance "against all Defendants" who violated his First Amendment rights by retaliating against him. (*Id*.) He maintains "body camera footage would provide his allegations of retaliation, but his requests have been denied 'as prejudicial and discriminatory.'" (*Id*.)  On September 27, 2024, Plaintiff filed a grievance against Defendant Garza because Garza threatened Plaintiff during an interview, interfered with fact finding, and tried to stop the interview, in violation of Plaintiff's rights. (*Id*.)

The above allegations comprise claim nineteen; the Court did not include the text clearly copied directly from the Court's earlier screening order, as that information does not serve to state a claim. (*See* Doc. 24 at 12-13.) The Court construes the allegations summarized above to assert First Amendment retaliation claims against Defendants Fernandez, Soares, Stohl, and Garza. To the extent Plaintiff intended to assert these claims against any other defendant, he fails to do so. As previously explained, vague references to "Defendants" or "all Defendants" or "other defendants" fail to state a claim. *Barren*, 152 F.3d at 1194.

Liberally construing the third amended complaint and accepting all facts as true, Plaintiff fails to state a retaliation claim against Defendants Stohl, Soares or Garza. Plaintiff's allegations against these individuals amount to conclusory statements that he filed grievance against them. No facts allege Stohl, Soares or Garza took adverse action *because* Plaintiff engaged in some earlier protected conduct. *Rhodes*, 408 F.3d at 567-68. Moreover, the facts alleged regarding Stohl and Soares are confusing, vague and conclusory. *Iqbal*, 556 U.S. at 678.

As concerns Defendant Fernandez, only because the Court has found Plaintiff plausibly alleges other claims against Defendant Fernandez, will it infer from the sparse facts alleged in claim nineteen that Fernandez's adverse action — asking another inmate to assault Plaintiff — was because Plaintiff engaged in the protected conduct of filing grievances. As such, these allegations permit the drawing of a reasonable inference that Fernandez intended to chill Plaintiff's First Amendment rights, and they clearly did not advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567-68.

In sum, in his nineteenth claim for relief, Plaintiff alleges a cognizable First Amendment retaliation claim against Defendant Fernandez but fails to allege any other cognizable claim against any other defendant.

## V.     SCREENING SUMMARY

The undersigned concludes Plaintiff's third amended complaint states the following plausible or cognizable claims:

- First Amendment retaliation against Defendant Stohl (claim six)
- First Amendment retaliation against Defendants Soares and Gansaga (claim seven)
- Fourteenth Amendment due process violations against Defendants Stohl and Sterns (claim seven)
- First Amendment retaliation against Defendant Fernandez (claim eleven)
- First Amendment retaliation against Defendants Fernandez and Reaves (claim thirteen)
- Eighth Amendment threat to safety against Defendant Fernandez (claim fourteen)
- First Amendment retaliation against Defendant Fernandez (claim seventeen)
- First Amendment retaliation against Defendant Fernandez (claim nineteen)

The third amended complaint fails to allege any other cognizable claim against any other named defendant.

Given these findings, the Court considers whether granting Plaintiff additional leave to amend his complaint is appropriate. Here, because Plaintiff's third amended complaint is deficient for many of the same reasons Plaintiff's second amended complaint was deficient and because Plaintiff failed to remedy many of those deficiencies, the Court assesses Plaintiff cannot cure his pleadings, and thus, granting further leave to amend would be futile. *Hartmann v. CDCR*, 707 F.3d 1114, 1129-30 (9th Cir. 2013) (affirming dismissal of first amended complaint and finding leave to amend futile where complaint's allegations belief plaintiff's entitlement to relief).

## VI.     CONCLUSION AND RECOMMENDATION

Accordingly, for the foregoing reasons, the Court **HEREBY RECOMMENDS** that:

1. This action **PROCEED** *only* on the following claims against the following persons, in

31

their individual capacities only:

    a.  First Amendment retaliation against Defendant Stohl (claim six)

    b.  First Amendment retaliation against Defendants Soares and Gansaga (claim seven)

    c.  Fourteenth Amendment due process violations against Defendants Stohl and Sterns (claim seven)

    d.  First Amendment retaliation against Defendant Fernandez (claim eleven)

    e.  First Amendment retaliation against Defendants Fernandez and Reaves (claim thirteen)

    f.  Eighth Amendment threat to safety against Defendant Fernandez (claim fourteen)

    g.  First Amendment retaliation against Defendant Fernandez (claim seventeen)

    h.  First Amendment retaliation against Defendant Fernandez (claim nineteen)

2.  Any remaining claims be **DISMISSED**; and

3.  Defendants Brazil, Fontenote, Garza, Logan, Padilla, Sauceda, Tobey, Tuman, and Valasquez be **DISMISSED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

A party's failure to file any objections within the specified time may result in the waiver

of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **June 15, 2026**

_____
UNITED STATES MAGISTRATE JUDGE